Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| KOMODIDAD DISTRIBUTORS, INC.<br><br>*Recurrido*<br><br>v.<br><br>FIRSTBANK PUERTO RICO; FIRSTBANK INSURANCE AGENCY, INC.; FULANO DE TAL<br><br>*Peticionario* | KLCE202500294 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2019CV03600 (508)<br><br>Sobre: Sentencia Declaratoria |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2025.

Comparecen ante nos, FirstBank Puerto Rico y FirstBank Insurance Agency, Inc. (peticionarios o "FirstBank" y "FBIA") mediante recurso de *Certiorari*, en el cual solicitan la revisión de la *Resolución*[1] emitida y notificada el 2 de junio de 2022, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Mediante esta, el foro primario declaró *No Ha Lugar* a los siguientes escritos: (1) *Solicitud de Sentencia Sumaria Parcial*[2] presentada por Komodidad Distributors, Inc. (Komodidad o recurrida); (2) *Oposición a Solicitud de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria Parcial*[3] presentada por FirstBank y FBIA; (3) *Solicitud de Sentencia Sumaria sobre la Segunda y Tercera Causa de Acción*[4] presentada por FirstBank y FBIA.

---

[1] Apéndice del recurso de *Certiorari*, págs. 56-76.
[2] Apéndice del recurso de *Certiorari*, págs. 446-891.
[3] Apéndice del recurso de *Certiorari*, págs. 262-445.
[4] Apéndice del recurso de *Certiorari*, págs. 212-238.

Número Identificador

SEN2025_____

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *Certiorari* solicitado y **confirmamos** el dictamen recurrido.

## I.

El 11 de abril de 2019, Komodidad presentó una *Demanda*[5], en la cual solicitó al TPI que dictara sentencia declaratoria en la cual se adjudicara que el pago de la póliza de seguros ascendiente a seiscientos treinta mil cuatrocientos dólares ($630,400.00) le corresponde a Komodidad y no a FirstBank. Por otro lado, requirió que se le pagara la suma de un millón de dólares ($1,000,000.00) por concepto de daños y perjuicios, así como, el pago de intereses legales desde la emisión de los cheques gestionados por Integrand Assurance Company (Integrand) hasta la fecha en que pudieran cobrar los pagos, honorarios de abogados, más las costas del litigio.

Así las cosas, el 8 de julio de 2019, FirstBank y FBIA presentaron su *Contestación a Demanda*[6], admitieron y negaron algunos hechos. Al presentar sus defensas, argumentaron que el recurso presentado por Komodidad era contrario a los términos y condiciones que rigen la relación entre las partes. Dicha defensa se fundamentó en extractos de las escrituras otorgadas entre las partes. Además, alegaron que no existía un nexo causal entre los daños reclamados y las presuntas actuaciones y/u omisiones negligentes o culposas de los peticionarios.

Posteriormente, el 13 de enero de 2020, la recurrida presentó *Demanda Enmendada*[7], en la que reiteró que es la única parte con derecho a cobrar ciertos pagos emitidos, al amparo de una póliza de seguro que gestionó en cumplimiento con los requisitos de un préstamo hipotecario que tenía con FirstBank. También, arguyó que

---

[5] Apéndice del alegato en oposición al recurso de *Certiorari*, págs. 1-10.
[6] Apéndice del alegato en oposición al recurso de *Certiorari*, págs. 11-29.
[7] Apéndice del recurso de *Certiorari*, págs. 918-929.

al momento en que se hicieron los pagos de la póliza, FirstBank ya no era el acreedor hipotecario de Komodidad, pues pasó a ser dueño y arrendador de las propiedades, en virtud de unas escrituras de dación en pago y contratos de arrendamiento. En cuanto a este asunto, Komodidad indicó que el endoso existente al emitirse los pagos era uno de "mortgage holder" y que FirstBank ya no era el acreedor hipotecario, sino el dueño de los edificios. Por último, incluyeron una tercera causa de acción en daños por incumplimiento de contrato. Komodidad solicitó, entre otros, una suma no menor de un millón quinientos mil dólares ($1,500,000.00) por concepto de gastos de mudanza, negociación de un nuevo contrato de arrendamiento, pérdida de ingresos y ganancias, y daños por incumplimiento en el contrato de arrendamiento.

Consecuentemente, el 16 de julio de 2020, FirstBank y FBIA sometieron su *Contestación a Demanda Enmendada*[8], en la que reiteraron que la relación entre estos y la recurrida se regía por los términos y condiciones de las escrituras en dación en pago y los contratos de arrendamiento de los edificios localizados en Ponce y en Bayamón. De igual manera, reafirmaron que no existía un nexo causal entre los daños reclamados y las presuntas actuaciones y/u omisiones negligentes o culposas de los peticionarios.

Por otra parte, el 23 de abril de 2021, Komodidad sometió una *Solicitud de Sentencia Sumaria Parcial*[9], en la cual alegó que no existía controversia alguna, ya que FirstBank venía obligado a endosar los cheques emitidos por Integrand a favor de este debido a que, a la fecha de emisión, FirstBank dejó de ser acreedor hipotecario. Propuso 24 hechos que no están en controversia. Además, incluyó catorce (14) hechos que están en controversia.

---

[8] Apéndice del recurso de *Certiorari*, págs. 892-917.
[9] Apéndice del recurso de *Certiorari*, págs. 446-891.

En consecuencia, el 1 de julio de 2021, los peticionarios presentaron una *Oposición a "Solicitud de Sentencia Sumaria Parcial" y Solicitud de Sentencia Sumaria Parcial*[10] en la cual adujeron que la totalidad de los hechos propuestos como esenciales e incontrovertidos por Komodidad eran impertinentes e insuficientes para que prospere su reclamo sobre los pagos objeto de controversia. Esto, debido a que ninguno hacía referencia a lo pactado entre las partes en las escrituras de dación en pago y en los contratos de arrendamiento. Además, solicitaron que se dictara una sentencia sumaria parcial sobre la sentencia declaratoria, pues, según las disposiciones contractuales, los pagos objeto de controversia le pertenecían a FirstBank. Asimismo, propusieron nueve (9) hechos sobre los cuales entendían que no hay controversia, y sometieron 13 anejos para fundamentar su petitorio. Expresaron que de los 24 hechos propuestos por Komodidad en la *Solicitud de Sentencia Sumaria Parcial*[11], los hechos número 3, 4, 5, 8, 9, 10, 11, 13, 16, 17, 18, 19, 20, 22 y 23 están en controversia, según redactados y/o no son fieles a la verdad ni compatibles con el descubrimiento de prueba que se le ha notificado a la Demandante.

Luego de varios trámites procesales, el 6 de agosto de 2021, FirstBank y FBIA sometieron su *Contestación a Demanda Enmendada*[12] en la que manifestaron que era improcedente la reclamación en su contra dado que, presuntamente, de los contratos de arrendamientos firmados entre FirstBank (como propietario de los edificios) y Komodidad (en concepto de arrendataria) surgía de que los "Improvements and Betterments" que la recurrida realizara a los edificios serían propiedad de FirstBank. De manera que, afirmaron que Komodidad tenía el conocimiento de que cualquier

---

[10] Apéndice del recurso de *Certiorari*, págs. 262-445.
[11] Apéndice del recurso de *Certiorari*, págs. 446-891.
[12] Apéndice del recurso de *Certiorari*, págs. 239-261.

seguro que estos obtuvieran sobre los edificios serían considerados como un seguro primario. Komodidad, tampoco solicitó la aprobación previa a FirstBank para realizar las alteraciones o las mejoras que alegadamente le realizó al edificio arrendado en Ponce, lo cual constituyó un incumplimiento de contrato. Por último, los peticionarios manifestaron que los contratos de arrendamiento disponían que FirstBank podía vender los edificios arrendados y que estaría bajo la discreción de los nuevos adquirentes el continuar con el arrendamiento.

Posteriormente, el 31 de agosto de 2021, los peticionarios presentaron otra *Solicitud de Sentencia Sumaria sobre la Segunda y Tercera Causa de Acción*[13] en la que argumentaron que, luego de varios trámites de descubrimiento de prueba, Komodidad no contaba con evidencia documental que sirviera para corroborar y sustentar las reclamaciones esbozadas sobre daños y perjuicios e incumplimiento contractual. Enumeraron once (11) hechos que no están en controversia; y conjuntamente, incluyeron 5 anejos, a saber: Extracto de deposición de Noemí Rodríguez, Contrato de arrendamiento del edificio de Ponce, Sección 16.1, Sección 18.2, Carta enviada por correo certificado el 18 de mayo de 2018, Demanda Enmendada, Transcripción de deposición del Sr. Galiano, y deposición de la Sra. Cartagena.

Inconformes, el 17 de septiembre de 2021, Komodidad presentó una *Oposición a Solicitud de Sentencia Sumaria Parcial y Dúplica,* donde alegó que los intentos de FirstBank de crear controversias sobre los hechos no resultan medulares ni pertinentes a la solicitud de estos. Explicó que, a la fecha de emisión de los cheques, el Contrato de Préstamo entre las partes no estaba vigente, sino que, con la dación en pago, transmitió toda la propiedad mueble

---

[13] Apéndice del recurso de *Certiorari,* págs. 212-238.

e inmueble a FirstBank. Recalcó que los únicos contratos relevantes respecto a la controversia eran los dos (2) contratos de arrendamiento. Además, razonó que FirstBank no podía tener un resarcimiento por la pérdida de una propiedad respecto a la cual ya reclamó y fue resarcido por su propia aseguradora. Somete extracto del testimonio deposición de la señora Cartagena.

No obstante, el 25 de octubre de 2021, FirstBank presentó una *Réplica a Oposición a Solicitud de Sentencia Sumaria Parcial de la Parte Demandada y Dúplica a Réplica a Oposición a Solicitud de Sentencia Parcial*[14], en la cual argumentó, entre otras cosas, que los pagos realizados por concepto de la póliza de seguros eran propiedad mueble producto de un contrato otorgado como parte de los requisitos del préstamo. Señaló que Komodidad ignoró los términos y condiciones de las daciones en pago, ya que estos abarcan todo lo existente y a lo que Komodidad tuviese derecho con relación a dichas propiedades, como el producto de los seguros gestionados en cumplimiento con los requisitos del préstamo.

En cambio, el 27 de octubre de 2021, Komodidad presentó una *Oposición a Solicitud de Sentencia Sumaria Parcial sobre la Segunda y Tercera Causa de Acción de la Demanda Enmendada*[15]. Adujo que la omisión de FirstBank de endosar los cheques a los que no tenía derecho, era relación causal suficiente para la procedencia de la causa de acción de daños. Por otro lado, en cuanto a la causa de acción por incumplimiento de contrato, alegó que existía controversia sobre los hechos materiales propuestos por FirstBank. Alegó que el contrato de arrendamiento tenía una duración de dos (2) años, por lo que tenía una expectativa de vigencia. Finalmente, indicó que, aunque el nuevo arrendador podía dar por terminado el arrendamiento, si el arrendador antiguo vendió la propiedad sin

---

[14] Apéndice del recurso de *Certiorari*, págs. 173-187.
[15] Apéndice del recurso de *Certiorari*, págs. 77-172.

asegurarse que el nuevo adquirente honraría el contrato de arrendamiento, este último debía responderle al arrendatario al amparo del Artículo 1054 del Código Civil[16].

En vista de lo anterior, el 2 de junio de 2022, el foro primario emitió una *Resolución*[17] en la que declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por Komodidad. De igual manera, declaró *No Ha Lugar* las dos (2) solicitudes de sentencia sumaria que presentaron FirstBank y FBIA. El TPI formuló las siguientes determinaciones de hechos incontrovertidos:

1. Komodidad Distributors, Inc., es una corporación dedicada a la venta de ropa de mujer, accesorios y otro tipo de mercancía seca, debidamente organizada y autorizada para hacer negocios en el Estado Libre Asociado de Puerto Rico y que hace negocios como "Gatsby", (en adelante, "Komodidad").

2. FirstBank Puerto Rico, es una corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada, la cual se dedica al negocio de la banca.

3. Komodidad era propietaria de un edificio comercial ubicado en Bayamón, Puerto Rico y de otro edificio comercial ubicado en Ponce, Puerto Rico.

4. Ambos edificios comerciales estaban gravados con hipotecas que garantizaban un préstamo con FirstBank Puerto Rico (en adelante, "FirstBank")

5. De esta manera, la relación entre Komodidad y FirstBank comenzó como una de deudor y acreedor hipotecario, respectivamente.

6. El Banco Popular de Puerto Rico tenía un interés minoritario en uno de los préstamos.

7. El 27 de febrero de 2014, se firmó el contrato de préstamo ("Credit Agreement") entre Komodidad Distributors, Inc. y FirstBank Puerto Rico.

8. Como parte del contrato de préstamo entre Komodidad ("Borrower") y FirstBank ("Administrative Agent"), éste último exigió a Komodidad que obtuviera y mantuviera vigentes ciertos seguros sobre las propiedades inmuebles.

9. En específico, la sección 5.1 (b) del contrato de préstamo le requirió a los Prestatarios (Borrowers) el:

> Maintain, and cause each of its Subsidiaries to maintain, all of their properties (real and personal) insured at all times by responsible, reputable and financially sound insurance companies or associations in such amounts

---

[16] 31 LPRA sec. 3018.
[17] Apéndice del recurso de *Certiorari*, págs. 56-76.

and covering loss or damage by fire, earthquake and windstorm and such other risks as are usuallycarried by companies engaged in similar businesses and owning similar properties as the Borrowers, and maintain adequate (in the reasonable opinion of the Administrative Agent) business interruption insurance, product liability insurance and other insurance against liability to persons for such risks and hazards and in such amounts as are usually carried by companies engaged in similar businesses; all such policies shall name the Administrative Agent (for its benefit and the ratable benefit of the Lenders) as an insured party (as its interests may appear) and provide for payment of the proceeds thereof to the Borrowers and the Administrative Agent, as their respective interests may appear, and shall contain anendorsement providing that the insurance shall not be cancellable except upon thirty (30) days prior written notice to the Administrative Agent.
[...].
The Administrative Agent will determine, at its sole discretion, whether the proceeds of the Insurance Policies will be used to satisfy any outstanding amounts of the Borrowers hereunder or under the other Loan Documents, or be used for the replacement, repair or restoration of such property, said determination to be conclusive and binding on the Borrowers.

10. Ambos edificios comerciales fueron asegurados por Komodidad con Integrand Assurance Company. El número de la póliza es CP-028098258-01.

11. En cumplimiento con los requisitos de préstamo, Komodidad gestionó en favor de FirstBank, un endoso de Loss Payee/Mortgagee.

12. Posteriormente, Komodidad se sometió a un proceso de quiebra.

13. Según ordenado por el Tribunal de Quiebras del Distrito de Puerto Rico, Komodidad y FirstBank entraron en un acuerdo de dación en pago, mediante el cual se le transfirió a FirstBank la titularidad sobre los edificios comerciales de Bayamón y Ponce. Siendo así, FirstBank advino propietario de ambos edificios.

14. Dichos negocios jurídicos fueron realizados en diferentes escrituras de dación en pago. Para el edificio de Bayamón, se autorizó la Escritura Núm. 3, titulada: "Deed of Transfer of Real Estate Property and Cancellation of Mortgage Notes and Mortgages as Partial Payment in Kind and Constitution of Right of First Refusal Pursuant to Order of Unites States Bankruptcy Court for the District of Puerto Rico (Bayamón Property)", la cual se otorgó el 30 de junio de 2017, ante el notario público, Rubén M. Medina Lugo.

15. Para el edificio en Ponce se autorizó la Escritura Número 8, titulada: "Deed of Transfer of Real Estate Property and Cancellation of Mortgage Notes and Mortgages as Partial Payment in Kind and Constitution of Right of First Refusal Pursuant to Order of Unites States Bankruptcy Court for the

District of Puerto Rico (Ponce Property)", la cual se autorizó en la misma fecha y ante el mismo notario público que en la Escritura Núm. 3.

16. En la cláusula cuarta de la Escritura Número 8 (Ponce Property) se dispuso:

> In compliance with certain "Order Confirming Debtors´ First Amend Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code", issued by the United States Bankruptcy Court for the District of Puerto Rico [...]; Debtor hereby transfers, conveys and assigns the Property, including any personal or real estate property existing, developed, built and installed, as the case
> may be, within the Property and including all plans, specifications, permits, endorsements, studies, tests, environmental, other reports and contracts in possession of Debtor, to which Debtor has tittle to and are assignable under the Bankruptcy Court´s Order and applicable law, to the Bank. [...].

17. La cláusula cuarta en la Escritura Número 3 (Bayamón Property) dispuso lo mismo.

18. Luego de que FirstBank adquiriera ambos edificios mediante las correspondientes escrituras de dación en pago, Komodidad alquiló ambos edificios. Es decir, Komodidad se convirtió en arrendataria y FirstBank en el arrendador.

19. El 30 de agosto de 2017, se suscribieron los dos contratos de arrendamiento, mediante los cuales FirstBank le arrendó los edificios de Bayamón y Ponce a Komodidad.

20. Los contratos de arrendamiento suscritos son similares, pero no idénticos.

21. El contrato de arrendamiento para el edificio comercial en Ponce, tenía una vigencia de dos (2) años.

22. El edificio comercial arrendado por Komodidad era un espacio de 12,000 pies cuadrados en el Edificio #1 de Galería Sur en Ponce.

23. Este edificio comercial sería ocupado por la tienda "Gatsby".

24. Bajo la póliza maestra de FirstBank, con Universal Insurance Company, ambos edificios quedaron automáticamente asegurados contra pérdidas de toda naturaleza, incluyendo por daños a la propiedad sufridos a consecuencia de un huracán.

25. Para el periodo correspondiente de 26 de junio de 2017 al 31 de diciembre de 2017, se emitió en la póliza de Komodidad con Integrand Assurance Company, el endoso Núm. CP-028098258-01-000010, el cual eliminó a FirstBank como "Mortgagee Holder" de los edificios en Bayamón y Ponce.

26. Para el periodo correspondiente de 18 de agosto de 2017 al 31 de diciembre de 2017, se emitió el endoso Núm. CP-

028098258-01-000011, el cual declaró nulo el endoso #10(CP-028098258-01-000010).

27. En ambos contratos de arrendamiento, Komodidad, como arrendataria, debía mantener una póliza de responsabilidad pública, seguro de fuego sobre el contenido y equipos, cubierta amplia de "boiler and machinery", cristales e interrupción de negocio.

28. En la cláusula número 6 del contrato de arrendamiento del edificio de Bayamón, se dispuso:

> (6). INSURANCE: Tenant [Komodidad] will procure and keep in effect during the Term: (a) Comprehensive General Liability Insurance Coverage, which shall include an "each occurrence" limit of not less than One Million Dollars ($1,000,000), including the following coverages: $1,000,000 limit per occurrence;$1,000,000 Personal & Advertising Injury; $2,000,000 general aggregate; $2,000,000 Product Completed Operations;$ 1,000,000 Employer's Liability Stop Gap Premises-Operations, Products Liability, Completed Operations, Personal and Advertising Injury, Contractual Liability; Fire Legal Liability and Water Damage and Sprinkler Leakage Legal Liability with a limit of $100,000; and which insurance shall contain a contractual liability endorsement covering the matters set forth in Section 14.1 hereof (including a hold harmless agreement naming First BanCorp. and Landlord) and an additional insured endorsement naming First BanCorp. and Landlord; (b) Fire Insurance with extended coverage, vandalism and malicious mischief endorsements with $500,000 limit per occurrence, in an amount adequate to cover the full replacement value of all fixtures and contents in the Premises in the event of a fire or other casualty; (c) Broad Form Boiler and Machinery Insurance on all air conditioning equipment, boilers and other pressure vessels or systems, whether fired or not fired, installed by Tenant in, adjoining, above or beneath the Premises; and if said objects and the damage that may be caused by or result from them are not covered by Tenant's extended coverage insurancementioned in (b) above, such Boiler and Machinery Insurance shall be in an amount of not less than Five Hundred Thousand Dollars ($500,000.00); (e) Intentionally Omitted45 ; and (f) Plate Glass Insurance covering all plate glass in the Premises, to the extent required by Landlord.

29. La cláusula número 6 del contrato de arrendamiento del edificio de Bayamón también dispone:

> Tenant's insurance shall be primary with respect to any claim arising out of events that occur in, around or near the Premises, such insurance to name Landlord as an additional insured. Certificates of insurance shall be furnished to Landlord by the insurance carriers licensed to do business in the Commonwealth

of Puerto Rico and in good standing with the Office of the Commissioner of Insurance of Puerto Rico with an A.M. Best Company ("Best's") rating of at least A-Excellent, and said policies shall provide for sixty (60) days prior notification to bothparties in the event of cancellation or material change or amendment. Landlord and Tenant mutually release each other for any loss or damage covered by said insurance. All policies procured by Tenant hereunder shall contain an endorsement containing an express waiver of any right of subrogation by the insurance company against Landlord and First BanCorp. (whether named as an insured or not).

30. En el contrato de arrendamiento del edificio de Ponce, FirstBank debía mantener una cubierta de fuego y cubierta extendida (de propiedad) sobre el edificio.

31. La Sección 14.2 del contrato de arrendamiento del edificio de Ponce dispone las obligaciones de FirstBank ("Landlord") con relación al seguro del edificio. La misma indica:

Landlord´s Insurance: (a) On or after the Commencement Date, the Shopping Center and the Demised Premises shall be insured byLandlord [FirstBank] against fire and such other risks as are, from time to time, included in standard extended coverage endorsements, vandalism and malicious mischief and special broad form coverage in the Commonwealth of Puerto Rico in amountsequal to at least eighty percent (80%) of the replacement value thereof above foundation walls and not more than one hundred percent (100%) of the replacement cost thereof, with such reasonable loss deductibles as Landlord may select. Such policy may contain, at Landlord's option, a rent insurance endorsement. Landlord shall have the right to insure and maintain the insurancecoverage set forth herein under blanket insurance policies covering other properties owned, leased or operated by Landlord.

32. La Sección 14.4 del contrato de arrendamiento del edificio de Ponce establece:

Insurance for Tenant´s Alterations of Premises: Tenant[Komodidad] agrees that it shall, upon completion of any alterations, additions or improvements to the Demised Premises made subsequent to the initial construction thereof, advise Landlord in writing of the actual cost thereof so that Landlord can insure the same. If Tenant shall fail to advise Landlord of the actual cost of any such alterations, additions or improvements as required in this Section or understates its actual cost thereof, and as a result thereof Landlord is adjudged a co-insurer by its insurance company, then and in any such event, any losses or penalties Landlord shall sustain shall be borne by Tenant and shall be immediately paid by

Tenant upon receipt of a bill and reasonably satisfactory evidence of such loss or penalty.

33. La Sección 14.5 del contrato de arrendamiento del edificio de Ponce establece que Komodidad se compromete a asegurar y mantener desde y luego de la fecha de comienzo del contrato de arrendamiento:

(i) Comprehensive General Liability Insurance on an occurrence basis with a minimum of liability in an amountof not less than One Million Dollars ($1,000,000.00) [...].
(ii) Fire Insurance with extended coverage, vandalism and malicious mischief endorsements with $500,000 limit per occurrence, in an amount adequate to cover the full replacement value of all fixtures and contents in the Demised Premises in the event of a fire or other casualty;
(iii) Broad Form Boiler and Machinery Insurance [...];
(iv) Business Interruption Insurance [...]

34. La Sección 14.6 dispone:

(b) All policies of insurance procured by Tenant shall be for a term of one year, renewable every year for the duration of the Term of this Lease and shall be written as primary policies not contributing with and not in excess of coverage that Landlord may carry.

35. El 20 de septiembre de 2017, el huracán María impactó a Puerto Rico y causó graves daños en los edificios arrendados por Komodidad a FirstBank.

36. FirstBank le reclamó a su aseguradora de propiedad, Universal Insurance Company, su estimado de los daños sufridos en el edificio de Ponce y en el edificio de Bayamón.

37. Komodidad permaneció ocupando el edificio de Ponce.

38. Los daños reclamados por Komodidad a Integrand Assurance Company, bajo la póliza #CP-028098258-01-000000, para la tienda de Bayamón ascendieron a $725,710.96 y los reclamados para la tienda de Ponce ascendieron a $593,246.28, según ajustados por su ajustador público, American Claims Management Services.

39. Integrand Assurance Company acordó pagar la suma de $176,000.00, por el edificio de Bayamón y $454,400.00, por el edificio de Ponce.

40. Posteriormente, Integrand Assurance Company emitió los correspondientes cheques a la orden de Komodidad y de FirstBank, con relación a la reclamación presentada al amparo de la póliza número CP-028098258-01-00000, por los daños sufridos en los edificios de Ponce y Bayamón como consecuencia del paso del huracán María.

41. Se emitió un cheque por la cantidad de $176,000.00 por la propiedad de Ponce y un cheque por la cantidad de $454,000.00 por la propiedad de Bayamón.

42. El 12 de junio de 2018, Integrand Assurance Company y Komodidad acordaron una "Aceptación de Pago y Relevo

Total de Responsabilidad", con respecto a la totalidad de las reclamaciones bajo la póliza CP-028098258-01-000000.

43. El 18 de mayo de 2018, FirstBank le notificó a Komodidad que había vendido el edificio comercial de Ponce y que, efectivo el 1 de junio de 2018, los próximos pagos por concepto de canon de arrendamiento debían ser realizados a nombre del nuevo dueño, el Consejo de Salud de Puerto Rico, Inc.

44. El 21 de mayo de 2018, el Consejo de Salud de Puerto Rico, Inc. le notificó a Komodidad que no honraría el contrato de arrendamiento del espacio que ocupaba la tienda Gatsby, y le concedían diez (10) días calendario a partir de la fecha de la carta para desocupar en su totalidad el local de Gatsby.

De igual forma, el TPI determinó como hechos en controversia los que se discutirán más adelante.

Así pues, el 17 de junio de 2022, FirstBank y FBIA presentaron una *Solicitud de Reconsideración*[18] en la cual esbozaron que los hechos controvertidos según la *Resolución* del TPI eran impertinentes para resolver la causa de acción sobre sentencia declaratoria. Alegaron que, el factor de cómo leían los endosos, no era pertinente para determinar quién tenía derecho al cobro de los cheques. FirstBank, adujo que la controversia se basaba en si el traspaso de la propiedad y derechos, objeto de las daciones en pago, incluían el pago de la póliza de seguro. A lo cual concluyeron que les correspondía el derecho a estos porque eran propiedad mueble producto de un contrato otorgado como parte de los requisitos de préstamo. Además, presentaron argumentos los cuales demostraban que los hechos controvertidos, según el TPI, realmente no estaban en controversia.

Por otro lado, Komodidad sometió una *Oposición a Solicitud de Reconsideración*[19] en la que insistió que los contratos de arrendamiento no obligaban a Komodidad a asegurar los edificios como la póliza que tenía con Integrand. Asimismo, estableció que dos (2) de los hechos controvertidos por el TPI quedaron estipulados en el *Informe de Conferencia con Antelación a Juicio*[20] *(IPCAJ)*. En

---

[18] Apéndice del recurso de *Certiorari,* págs. 46-55.
[19] Apéndice del recurso de *Certiorari,* págs. 2-14.
[20] Apéndice del recurso de *Certiorari,* págs. 15-45.

cuanto a ello, sobre el hecho controvertido "#1. ¿Quién es/era el agente de seguros de Komodidad?" respondió que en el Hecho #51 del *IPCAJ* se estipuló que el agente de seguros de Komodidad era General Insurance Brokers, Inc. Por otra parte, en cuanto al hecho controvertido "#10. El contrato de arrendamiento del edificio de Bayamón, ¿fue cancelado por FirstBank o por Komodidad?" contestó que en el Hecho #48 del *IPCAJ*, se estipuló que Komodidad solicitó entregar las llaves y cancelar el arrendamiento del edificio de Bayamón.

Así las cosas, el TPI emitió una *Resolución Interlocutoria*[21] en la que declaró *No Ha Lugar* la *Solicitud de Reconsideración*.

Inconforme con el dictamen, los peticionarios presentaron el recurso de epígrafe y esgrimieron los siguientes señalamientos de error:

> PRIMER ERROR: EL TPI ABUSÓ DE SU DISCRECIÓN Y ERRÓ AL NO RECONSIDERAR SU DETERMINACIÓN DE QUE EXISTE CONTROVERSIA SOBRE (1) QUIÉN ES/ERA EL AGENTE DE SEGUROS DE KOMID (SIC.) Y (2) QUIÉN CANCELÓ EL CONTRATO DE ARRENDAMIENTO DEL EDIFICIO DE BAYAMÓN, A PESAR DE QUE LA RESPUESTA A ESTAS INTERROGANTES FUE ESTIPULADA POR LAS PARTES EN EL ICAJ.

> SEGUNDO ERROR: ERRÓ EL TPI EN SU APLICACIÓN DEL DERECHO Y APRECIACIÓN DE LA PRUEBA AL DETERMINAR QUE LOS DIEZ (10) HECHOS DETERMINADOS EN LA RESOLUCIÓN COMO HECHOS EN CONTROVERSIAS SON MATERIALES Y PERTINENTES PARA DETERMINAR QUÉ PARTE TIENE DERECHO A LOS PAGOS OBJETO DE CONTROVERSIA.

> TERCER ERROR: ERRÓ EL TPI EN SU APLICACIÓN DEL DERECHO Y APRECIACIÓN DE LA PRUEBA AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA SOBRE LA SEGUNDA Y TERCERA CAUSA DE ACCIÓN PRESENTADA POR LAS CODEMANDADAS, PUES DE LA RESOLUCIÓN CUYA REVISIÓN SE SOLICITA NO SURGEN HECHOS EN CONTROVERSIA QUE IMPIDAN LA RESOLUCIÓN SUMARIA DE DICHAS CAUSAS DE ACCIÓN.

El 21 de abril de 2025, la recurrida compareció mediante *Alegato en Oposición a Recurso de Certiorari*. Así, con el beneficio de

---

[21] Apéndice del recurso de *Certiorari*, pág. 1.

la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable a la controversia.

**II.**

**-A-**

El auto de *Certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[22] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[23]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[24]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[25].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[26]. No obstante, la Regla 52.1, *supra,* faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo

---

[22] 32 LPRA Ap. V, R. 52.1.
[23] 4 LPRA Ap. XXII-B, R. 40.
[24] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[25] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[26] *García v. Padró,* 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 180 (1992).

dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[27].

[...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *Certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *Certiorari*[28]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[29].

---

[27] 32 LPRA Ap. V, R. 52.1.

[28] *Feliberty v. Soc. de Gananciales,* 147 DPR 834, 837 (1999).

[29] *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012).

**-B-**

El objetivo de la sentencia sumaria es "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales"[30]. La Regla 36 de Procedimiento Civil establece los parámetros de este mecanismo[31]. Estas disponen que:

> [P]ara dictarse sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, surja que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, se debe dictar sentencia sumaria a favor de la parte promovente[32].

La Regla 36.3(a)(4) establece que la parte promovente "está obligada a [desglosar los hechos] en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya"[33]. De igual forma, se impone la misma responsabilidad al oponente de "citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente"[34]. El oponente debe probar que existe una controversia sobre un hecho material que es constitutivo de la causa de acción del demandante[35].

Como norma general, si la moción procede en derecho, el tribunal debe dictar la sentencia sumaria "a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada"[36]. Si el Tribunal de Primera Instancia considera que **no procede** dictar sentencia sumaria en el

---

[30] *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).
[31] 32 LPRA Ap. V, R. 36.
[32] *Const. Jose Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).
[33] 32 LPRA Ap. V, R. 36 (a)(4) y *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).
[34] *Íd.*
[35] *Oriental Bank v. Perapi*, 192 DPR 7, 26 (2014).
[36] *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).

caso que tiene ante sí, o que **no procede conceder ese remedio en su totalidad**, es obligatorio que cumpla con lo expuesto en la Regla 36.4 de Procedimiento Civil[37], que dispone:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia.** Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.

En conclusión, es menester consignar los hechos que, a juicio del TPI, están en controversia y aquellos que no lo están; lo cual es imperativo para entender cuáles son los hechos que impiden que se dicte la sentencia sumaria en su totalidad.

Cónsono con esta disposición, la Regla 42.2 de Procedimiento Civil establece que se deben especificar los hechos probados junto a las conclusiones de derecho en todos los pleitos[38]. Sin embargo, el tribunal queda relevado de realizar las especificaciones si resuelve mociones bajo las Reglas 10 ó 36.1 y 36.2[39]. Empero, resulta necesario determinar los hechos cuando se deniega total o parcialmente una moción de sentencia sumaria, conforme a la Regla 36.4[40].

Al revisar la determinación del TPI, el foro apelativo se limita a considerar los documentos que se presentaron ante el foro primario, entiéndase, las partes no pueden añadir en la apelación documentos, teorías o asuntos que no fueron presentados oportunamente[41]. Por otra parte, el foro apelativo únicamente puede

---

[37] 32 LPRA Ap. V, R. 36.4. (Énfasis nuestro).
[38] 32 LPRA Ap. V, R. 42.2.
[39] *Íd.*
[40] *Íd.*
[41] *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004).

determinar si existe alguna controversia sobre los hechos materiales y si se aplicó de manera correcta el derecho[42]. Así las cosas, el Tribunal Supremo discutió el estándar que debe utilizar este foro para revisar las mociones de sentencia sumaria en *Meléndez González v. M. Cuebas*[43]. Primeramente, el Tribunal de Apelaciones se encuentra en la misma posición que el TPI, sin embargo, la revisión es de *novo,* por lo que se "debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria"[44]. De modo que, al estar en la misma posición que el TPI, el foro apelativo debe examinar que la moción y la oposición deben cumplir con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*[45]. Consecuentemente, al analizar la sentencia dictada por el TPI, se "**debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos**"[46]. Finalmente explica que "de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia"[47].

El Tribunal Supremo resolvió que los tribunales tienen discreción de examinar la evidencia que obra en los autos, aunque fuera omitida por las partes[48]. Incluso, estos pueden "obviar material que las propias partes hayan pasado por alto en sus

---

[42] *Íd.,* pág. 335.
[43] *Meléndez González v. M. Cuebas*, 193 DPR 100, 118–119 (2015).
[44] *Íd.*, pág. 118.
[45] *Íd.*
[46] *Íd.* (Énfasis nuestro).
[47] *Íd.,* pág. 119.
[48] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 433 (2013).

escritos y resolver estrictamente a base de lo que haya sido presentado"[49].

**III.**

En este caso, el peticionario nos solicita la revocación de la *Resolución* emitida por el TPI en la que se declaran No Ha Lugar las solicitudes de sentencia sumaria que se presentaron ante el foro primario. En síntesis, sostiene que el TPI cometió tres errores, a saber: (1) abusó de su discreción y al no reconsiderar su determinación de que existe controversia sobre ¿Quién es/era el agente de seguros de Komodidad?; ¿Quién canceló el contrato de arrendamiento del edificio de Bayamón, FirstBank o Komodidad? A pesar de que las partes estipularon estos hechos en el *IPCAJ*[50]*,* (2) erró al establecer que los diez (10) hechos, determinados en la *Resolución* como hechos en controversia, son materiales y pertinentes para resolver qué parte tiene derecho a los pagos objeto de controversia, y (3) erró al denegar la *solicitud de sentencia sumaria sobre la segunda y tercera causa de acción.*

Por su parte, la recurrida reconoce que, el primer error señalado por el peticionario fue cometido por el foro primario, porque esos hechos fueron estipulados por las partes. Referente al segundo error, también coincide con el peticionario que algunos de los hechos determinados por el TPI en su *Resolución* como hechos que se encuentran en controversia, entiende que, algunos son impertinentes para resolver la solicitud de sentencia sumaria. Razona que, a diferencia del peticionario, considera que los únicos documentos relevantes para resolver las controversias son los contratos de arrendamientos, no así las escrituras de dación en pago que se otorgaron en el proceso de quiebras. Sobre el tercer error, argumenta que el TPI no erró al no dictar sentencia sumaria sobre

---

[49] *Íd.*
[50] Entrada # 64 SUMAC.

la segunda y tercera causa de acción, porque opina que existe controversia en la forma que se canceló el contrato de arrendamiento.

Es norma establecida que, cuando se recurre de una resolución interlocutoria emitida por el TPI, este Tribunal tiene discreción para expedir el recurso presentado ante nuestra consideración. Conforme a la Regla 52.1 de Procedimiento de Civil, *supra*, el recurso de *certiorari* es el apropiado para revisar la denegatoria de las sentencias sumarias. Además, analizados los criterios conforme a la Regla 40 de nuestro Reglamento, *supra*, procede expedir el auto solicitado.

Nuestro Tribunal Supremo ha expresado que el tribunal apelativo, como foro revisor, utilizará los mismos criterios que el foro primario al determinar si procede una solicitud de sentencia sumaria. Sin embargo, el foro revisor solo considerará aquellos documentos presentados ante el foro primario, determinará si existe o no una controversia de hechos esenciales y si se aplicó el Derecho correctamente[51].

Así pues, nos corresponde determinar, de manera inicial, si las partes cumplieron con los requisitos necesarios que provienen de la Regla 36 de Procedimiento Civil[52], de modo que podamos entonces considerar las mociones presentadas.

Al examinar las siguientes mociones: *Solicitud de Sentencia Sumaria Parcial*; *Oposición a "Solicitud de Sentencia Sumaria Parcial" y Solicitud de Sentencia Sumaria Parcial*; *Solicitud de Sentencia Sumaria Sobre la Segunda y Tercera Causa de Acción de la Demanda Enmendada*; *Oposición a "Solicitud de Sentencia Sumaria Parcial" de la Parte Demandante y Réplica a Oposición a "Solicitud de Sentencia*

---

[51] *Reyes Sánchez v Eaton Electrical,* 189 DPR 586, 596 (2013).
[52] 32 LPRA Ap. V., R. 36, *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020).

*Sumaria Parcial"; Réplica a "Oposición a Solicitud de Sentencia Sumaria Parcial de la Parte Demandada" y Dúplica a "Réplica a Oposición a Solicitud de Sentencia Sumaria Parcial"; Oposición a "Solicitud de Sentencia Sumaria Parcial sobre la Segunda y Tercera Causa de Acción de la Demanda Enmendada"*, determinamos que todas cumplieron con el crisol de la normativa jurisprudencial[53] y con las exigencias de la Regla 36.3(a) de Procedimiento Civil, *supra.*

Tras revisar minuciosamente la *Resolución* recurrida, determinamos que, el TPI, considera que no procede dictar sentencia sumaria en el caso que tiene ante sí. Así pues, resulta obligatorio, examinar si el foro primario cumple con las disposiciones de la Regla 36.4 de Procedimiento Civil[54].

Conforme con esos principios la *Resolución* recurrida contiene una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, ordena la continuación de los procedimientos ulteriores.

En conclusión, es menester señalar que, a juicio del TPI, cumplió a cabalidad con el estándar de la Regla 36.4 de Procedimiento Civil[55].

Puntualizamos que, el TPI estableció como hechos en controversia los siguientes:

1. ¿Quién es/era el agente de seguros de Komodidad?

2. ¿Quién y/o quienes solicitó/solicitaron se cancelara y se declarara nulo el endoso CP028098258-01-000010? ¿FirstBank, FirstBank Insurance Agency, Komodidad y/o General Insurance Brokers, Inc.?

3. El endoso #11 para restituir a FirstBank en la póliza (de los edificios de Ponce y Bayamón), ¿fue emitido sin la correspondiente autorización de Komodidad y/o fue solicitado por el agente de seguros de esta última?

---

[53] Cabe destacar que la parte apelada cumplió con los criterios jurisprudenciales sobre sentencia sumaria, en específico presentaron prueba relacionada con la defensa de cosa juzgada.

[54] 32 LPRA Ap. V, R. 36.4. (Énfasis nuestro).

[55] Íd.

4. Luego de firmados los dos contratos de arrendamiento, ¿se emitió algún endoso en la póliza de Komodidad con Integrand Assurance Company para incluir a FirstBank como "Landlord"?

5. ¿Se autorizó un endoso #12 o algún otro posterior? Si lo(s) hubo, ¿cuál fue su contenido?, ¿afectó la cubierta de las propiedades en Bayamón y Ponce?

6. Luego del paso del huracán María, ¿quién, FirstBank o Komodidad, incurrió en los gastos de limpieza, remoción de escombros y/o gastos de reparación en el edificio de Ponce hasta el 30 de junio de 2018?

7. ¿Bajo cuál cubierta Komodidad le reclamó a su aseguradora Integrand Assurance Company los daños sufridos para cada uno de los edificios? ¿Fue bajo la cubierta de "Improvements and Betterments" y/o alguna otra?

8. La suma pagada por Integrand Assurance Company para el edificio comercial de Ponce, ¿fue en compensación por modificaciones, adiciones y/o mejoras realizadas al edificio arrendado o fue para compensar por los daños en la mercancía, bienes muebles y equipo de Komodidad como consecuencia del paso del huracán María?

9. ¿Bajo qué concepto la aseguradora Integrand Assurance Company emitió los cheques (de los edificios de Bayamón y Ponce) a la orden de FirstBank?, ¿en concepto de "Arrendador"/"Landlord", "Loss Payee/Morgagee, "Mortgage Holder" y/o "Additional Insured"?

10. El contrato de arrendamiento del edificio de Bayamón, ¿fue cancelado por FirstBank o por Komodidad?

Estos, nos llevan a atender simultáneamente los errores imputados por el peticionario y que están bajo nuestra consideración. Los primeros dos errores argumentados por el peticionario abordan los hechos que están en controversia según determinados por el TPI.

Referente al primer error, al momento que el TPI evalúa y adjudica las mociones dispositivas, las partes no habían estipulado los hechos en controversia (1) y (10).

En cuanto al segundo error, aun cuando las partes coinciden parcialmente en que el TPI incide en establecer hechos en controversia que no son pertinentes para resolver el caso de autos; cada parte aborda su argumento legal desde la perspectiva de derecho que entiende corresponde aplicar por el foro primario. Véase que, FirstBank alega que ninguno de los diez (10) hechos en controversia, listados por el TPI en su *Resolución*, son pertinentes

para resolver la controversia de autos. Sin embargo, sostiene que, con la lectura de las escrituras de dación, se resolverá la controversia sobre a quien le corresponde el pago. Por otra parte, Komodidad coincide parcialmente con FirstBank y razona que, los hechos en controversia enumerados dos (2), tres (3), cuatro (4) y cinco (5), están relacionados a los endosos en la póliza gestionada por Komodidad, los cuales son impertinentes para disponer del caso. En cambio, sustenta que, el hecho seis (6) está en controversia y los restantes hechos, entiéndase el siete, (7), ocho (8) y el nueve (9) solo concluyen que el único dueño de los cheques es Komodidad, esto, conforme al contrato de arrendamiento.

No cabe duda de que en un caso tan complejo como el de autos el TPI establece de forma adecuada las controversias. Así pues, en ausencia de circunstancias extraordinarias, o indicios de pasión, prejuicio, parcialidad o error manifiesto, este Tribunal de Apelaciones debe abstenerse de intervenir con el manejo del caso en una cuestión crucial como esta sobre la existencia de hechos medulares en controversia.

Finalmente, sobre el tercer error, esta gira en torno a la *Solicitud de Sentencia Sumaria sobre la Segunda y Tercera Causa de Acción* de FirstBank, la cual fue declarada no ha lugar por el foro primario. El TPI determina que aún existen controversias sobre estos hechos que son pertinentes para poder atender y resolver las tres distintas causas de acción ante su consideración, por lo cual, concluye que aún no se encuentra en posición de resolver por vía sumaria. Ante estas circunstancias, coincidimos con el TPI, por lo tanto, no habremos de intervenir con la determinación del foro primario en esta etapa de los procedimientos.

Luego de evaluar la totalidad del expediente y la bien fundamentada *Resolución* del TPI, colegimos que ninguno de los errores fue cometido.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, ***expedimos*** el auto de *certiorari* solicitado y ***confirmamos*** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                                    Lcda. Lilia M. Oquendo Solís
                              Secretaria del Tribunal de Apelaciones